1  JUBILEE LEGAL
   Daniel "Sparky" Abraham (Cal. Bar No. 299193)
2  300 E. Esplanade Dr., Suite 900
   Oxnard, CA 93036
3  Telephone: (805) 946-0386
4  Facsimile: (805) 620-7834
   sparky@jubilee.legal
5
   OLIVIER & SCHREIBER LLP
6  Christian Schreiber (Cal. Bar No. 245597)
   475 14th Street, Suite 250
7  Oakland, CA 94612
   Tel: (415) 484-0980
8  Fax: (415) 658-7758
9  christian@os-legal.com

10 RIGHTS BEHIND BARS
   Oren Nimni (MA Bar No. 691821) (*pro hac vice application forthcoming*)
11 416 Florida Avenue NW, #26152
   Washington, DC 20002
12 Tel: (202) 455-4399
13 oren@rightsbehindbars.org

14 *Attorneys for Plaintiff*

15

16 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17 **COUNTY OF LOS ANGELES**

18 **UNLIMITED CIVIL**

| | |
|---|---|
| 19 REGINA MARTINEZ, | Case No. 23AHCV00759 |
| 20 Plaintiff, | **THIRD AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES; PUBLIC INJUNCTIVE RELIEF** |
| 21 vs. | |
| 22 | |
| 23 CITIBANK, N.A., AND DOES, 1-20, | Cal. Civ. Code §§ 1786 *et seq.* |
| 24 Defendants. | Cal. Civ. Code § 51 |
| | 15 U.S.C. §§ 1691 *et seq.* |
| 25 | Cal. Bus. & Prof. Code §§ 17200 *et seq.* |
| | Cal. Const. Art. 1 § 1 |
| 26 | |
| 27 | Hon. William A. Crowfoot |
| | **JURY TRIAL DEMANDED** |
| 28 | |

Plaintiff Regina Martinez ("Plaintiff"), alleges as follows against Defendant Citibank, N.A. ("Citibank") and Does 1-20 (collectively, "Defendants"):

## INTRODUCTION

1. This is an action for damages and declaratory relief for violations of the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Civil Code §§ 1786 *et seq.*, the California Unruh Civil Rights Act, Civil Code § 51, the federal Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA"), and the California Right to Privacy, California Constitution Article 1 § 1.

2. Plaintiff seeks monetary sanctions against Citibank, N.A. for its material breach of its own arbitration clause by failing to timely pay its share of fees and costs pursuant to California Code of Civil Procedure §§ 1281 – 1281.99.

3. Pursuant to the Unfair Competition Law, Bus. & Prof. C. § 17200, et seq. ("UCL"), Plaintiff also seeks a public injunction against Defendant Citibank, N.A. to stop ongoing violations of the law perpetrated upon members of the public.

4. Unbeknownst to Citibank customers like Plaintiff, Citibank secretly obtains information about them in order to make credit decisions. Citibank's conduct is unlawful and adversely impacted Plaintiff and other Citibank customers, and will further harm members of the public if not halted by order of the Court.

5. Citibank engages in this conduct through a relationship with a United Kingdom-based company, Refinitiv, Ltd. d/b/a LSEG World-Check ("Refinitiv"), which searches for and furnishes records about Citibank's customers to Citi. Refinitiv furnished Citibank with a consumer report that Plaintiff did not authorize, and for which there was no permissible purpose for Citibank to obtain. In acting upon information unlawfully sought and obtained, Citibank has violated, and continues to violate, state and federal consumer protection, anti-discrimination, and privacy laws.

6. Citibank's conduct reflects its policy and practice of discriminating in the provision of credit on the basis of protected characteristics in violation of state and federal law.

7. Specifically, on information and belief, Citibank has a policy and practice of denying credit to individuals with criminal convictions regardless of the circumstances of their convictions, the length of time since the convictions, or any other factor that might demonstrate whether the individual actually presents the risk that Citi, through its policy, seeks to address. This is known as a "blanket ban," and has been found to violate anti-discrimination laws because it has a disparate impact on racial and ethnic minorities. Because individuals of certain races and ethnicities are disproportionately more likely to have criminal convictions, Citibank's policy and practice of unilaterally denying credit to individuals with criminal convictions places a disproportionate burden on certain persons on a prohibited basis in violation of, *inter alia*, the ECOA and the Unruh Civil Rights Act.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to California Civil Code § 1786.52, which provides for enforcement in any court of competent jurisdiction. The Court also has jurisdiction over this action pursuant to Code of Civil Procedure § 410.10 and California Constitution Article VI, § 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." The statutes under which this action is brought do not grant jurisdiction to any other trial court in California.

9. This Court has jurisdiction over each Defendant named herein because, based on information and belief, each Defendant is a corporation or association authorized to do business in California and registered with the California Secretary of State, or does sufficient business, has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market through the promotion, sale, marketing and/or distribution of goods and services in California and thereby having such other contacts with California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice. *See Yamaha Motor Co. v. Superior Court*, 174 Cal. App. 4th 264, 271 (2009).

10. Venue is proper in the Los Angeles County Superior Court pursuant to California Code of Civil Procedure §§ 393 and 395.5 because one or more of the violations alleged in this Complaint arise in the County of Los Angeles.

**PARTIES**

11. Plaintiff is a natural person over age 18 who at all relevant times has resided in Los Angeles County, California. Plaintiff's ethnicity is Hispanic or Latino.[1]

12. Defendant Citibank, N.A. is a Delaware Corporation with its headquarters in New York, NY. It does business in California and in this County. Citibank is a creditor as that term is defined in 15 U.S.C. § 1691a(e). Citibank is a drafting party as that term is defined in Civil Code § 1280(e).

13. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 20, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused damages thereby to the Plaintiff, as hereinafter alleged.

14. At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of their Co-Defendants, and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above. Defendants' officers and directors ratified or approved of the conduct described herein, including the conduct of its employees or agents.

---

[1] The term "Hispanic or Latino" is used as an ethnicity category, and the terms "Hispanic" and "Latino" are used interchangeably, by the United States Census Bureau. (*See* United States Census Bureau, "Measuring Racial and Ethnic Diversity for the 2020 Census" (August 4, 2021) available at https://www.census.gov/newsroom/blogs/random-samplings/2021/08/measuring-racial-ethnic-diversity-2020-census.html (last accessed February 25, 2024).)

15. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants, DOES 1-20, inclusive, were and are individuals, corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, have regularly conducted business in the County of Los Angeles, State of California.

**FACTUAL ALLEGATIONS**

16. In 2010, Plaintiff was convicted of drug and racketeering offenses related to alleged intent to sell $400 worth of narcotics as part of a Latino street gang.

17. Plaintiff was released on parole in 2013.

18. Since her release, Plaintiff has led an upstanding life and has had no further encounters with law enforcement.

19. Plaintiff enrolled in career training at Homeboy Industries, a well-known nonprofit that provides career training to formerly incarcerated people, and she now has a stable career that provides for her and her family.

20. As part of her rehabilitation, Plaintiff has been especially attentive to her financial stability, and in particular to building her credit.

21. Plaintiff hopes to purchase a home for her and her children, and she knows that her good credit is key to doing so.

22. To that end, Plaintiff obtained two credit cards from Defendant Citi, used them regularly, and made on-time payments.

23. In or around August 2022, without Plaintiff's knowledge or consent, Refinitiv furnished an investigative consumer report regarding Plaintiff to one or more of her credit card issuers, including Defendant Citi.

24. As a result of the investigative consumer report provided by Refinitiv, Citibank cancelled Plaintiff's credit cards without prior notice.

25. Plaintiff received notice from Citibank that her credit cards were being cancelled, which alerted Plaintiff to the possibility that Citibank had obtained a consumer report about her.

26. On information and belief, Citibank solicited the consumer report from Refinitiv without having a lawful purpose, and by providing a false certification of a lawful purpose, or by failing to provide certification of a lawful purpose.

27. By providing an investigative consumer report in a circumstance not authorized by the ICRAA in Civil Code § 1786.12, Refinitiv violated the ICRAA.

28. Refinitiv also violated the ICRAA by furnishing an investigative consumer report containing records of arrest and conviction of a crime that, from the date of disposition, release, and parole, antedate the report by more than seven years.

29. The investigative consumer report furnished by Refinitiv included records of arrest and conviction for a crime that, from the date of disposition, release, and parole, antedate the report by more than seven years in violation of Civil Code § 1786.18(a)(7).

30. As a result of the investigative consumer report unlawfully furnished by Refinitiv, Plaintiff's credit card accounts were abruptly closed, causing her transactions to be declined. This caused Plaintiff harm, including but not limited to inconvenience, embarrassment, unavailability of credit on which she relied, and the costs in time and money of investigating, retaining counsel, and filing this action.

31. Refinitiv knew or should have known of its specific obligations and duties under the ICRAA.

32. Refinitiv furnished derogatory information about a California resident concerning criminal convictions in California to a credit card issuer for a credit card used in California.

33. Refinitiv and Citibank knew or should have known that by accessing the records of California courts, furnishing derogatory information about a California resident to an American credit card issuer that does business throughout the United States, including California, its conduct was likely to cause harm in California. Specifically, Refinitiv and Citibank knew or should have known that this conduct was likely to lead to Plaintiff's account being closed, harm to her credit, and a decrease in her purchasing power, all of which would occur in California.

34. The ICRAA was passed to "insure that investigative consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," and to require that investigative consumer reporting agencies conduct their business in a manner that is "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of the information in accordance with the requirements of this title." Civ. C. § 1786.

35. Refinitiv furnished an investigative consumer report regarding Plaintiff in a circumstance not authorized by the ICRAA, nor authorized by Plaintiff, and including information in the investigative consumer report that antedated the report by more than seven years. Civ. C. § 1786.18.

36. Citibank's conduct violates multiple provisions of the FCRA, Unruh, and ECOA.

37. For example, the FCRA requires, among other things, that information be provided to consumers any time an "adverse action" is taken against consumers based on a credit report, whether such adverse action is taken by an employer or furnisher of credit.

38. "Adverse action" includes "an action taken or determination that is….made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and adverse to the interests of the consumer." 15 U.S.C. § 1681a(k).

39. Adverse action has the same meaning as it does in ECOA, and includes the termination of an account or an unfavorable change in its terms.

40. Defendant Citibank violated 15 U.S.C. § 1681m(a) by failing to provide Plaintiff with notice of the adverse action that include information about the consumer reporting agency, Refinitiv, and the information contained in the consumer report upon which Citibank relied, in cancelling Plaintiff's credit cards.

41. Defendant Citibank further violated the FCRA by failing to provide Plaintiff with a copy of her rights under the FCRA, or the opportunity to receive her consumer report.

42. Defendant Citibank hid and refused to disclose its use of Refinitiv or the World-Check database to obtain information about Plaintiff.

43. Defendant Citibank refused to provide Plaintiff, even upon her request, with information contained in her consumer report that was used in connection with Citibank's cancellation of her credit cards.

44. Citibank also violates the provisions of ECOA and ICRAA because it unlawfully solicits and obtains, and unlawfully acts upon, information contained in consumer reports furnished by third parties, in order to learn information about the public that results in the discriminatory denial of credit in violation of ECOA and its enabling regulations.

45. ECOA prohibits discrimination in any aspect of a credit transaction. It applies to any extension of credit, including extensions of credit to small businesses, corporations, partnerships, and trusts.

46. The Consumer Financial Protection Bureau's ("CFPB") Regulation B, 12 C. Fed. Reg. Part 1002, implements ECOA. Regulation B describes lending acts and practices that are specifically prohibited, permitted, or required. Official staff interpretations of the regulation are found in Supplement I.

47. Under Regulation B, a lender cannot discriminate on the basis of race or make credit decisions on the basis of reasons not related to creditworthiness. For example, a creditor may consider any information in evaluating applicants, so long as the use of the information does not have the intent or the effect of discriminating against an applicant on a prohibited basis.

48. Regulation B does not mandate a specific type of credit analysis, but provides that any particular method of credit analysis cannot discriminate on the basis of race. Whether a lender uses an "empirically derived, demonstrably and statistically sound " system or a "judgmental" system, a lender cannot deviate from the anti-discrimination requirements of ECOA.

49. Lenders are given incentives to "self-test" their credit analysis systems. A self-test must be a program, practice, or study that a lender designs and uses specifically to determine the extent or effectiveness of its compliance with Regulation B. 12 CFR § 202.15. The results of the self-test must create data or factual information that is otherwise not available and cannot be derived from, inter alia, credit transactions. *Id.*

50. On information and belief, Citibank did not conduct a self-test to determine whether its "blanket ban" policy had an unlawful discriminatory impact based on race.

51. On information and belief, when Plaintiff obtained her credit cards from Defendant Citibank, Citibank used a discretionary analysis to determine whether Plaintiff's convictions for drug offenses from many years prior warranted denying her extension of credit.

52. On information and belief, between the time when Plaintiff obtained her credit cards from Citibank and August 2022, Citibank ended its policy of using a discretionary analysis to evaluate the risk posed by individuals with criminal convictions, and instead implemented a "blanket ban" policy, whereby all cardholders with certain criminal convictions would be denied credit regardless of the circumstances of their convictions, the time that had elapsed since their convictions, or any other mitigating factors to indicate that they did not pose a risk to Citi.

53. On information and belief, Citibank closed Plaintiff's credit cards due to its "blanket ban" policy – even though Citibank was aware that its blanket ban would have a disparate impact on African-American and Latino cardholders.

54. On information and belief, Citibank's "blanket ban" policy, although neutral on its face as to race and ethnicity, has a discriminatory effect on the general public of potential credit applicants and customers of certain races and ethnicities, and thereby violates the ECOA.[2] Specifically, Citibank's "blanket ban" policy has a discriminatory effect on Hispanic/Latino individuals such as Plaintiff.

55. Citibank's "blanket ban" policy is not necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice, because Citibank's previous policy of using a discretionary analysis to determine risk based on the individual circumstances of cardholders and applicants was a less discriminatory alternative practice that achieved Citibank's business purpose.

---

[2] *See* 12 C.F.R. § 1002.6(a) ("The legislative history of the [Equal Credit Opportunity Act] indicates that the Congress intended an "effects test" concept, as outlined in the employment field by the Supreme Court in the cases of *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), and *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), to be applicable to a creditor's determination of creditworthiness.").

56. On information and belief, Citibank's "blanket ban" policy applies to any individuals whose convictions fall within ten broad categories, including "Racketeering" and "Drugs."

57. Compared to white adults, Latino adults are approximately twice as likely to be incarcerated.[3]

58. Latino individuals such as Plaintiff are disproportionately more likely to be arrested and convicted for drug-related crimes than White individuals.[4]

59. Latino individuals such as Plaintiff are disproportionately more likely to be arrested and convicted for racketeering-related crimes than White individuals.[5]

60. Due to these disparities, on information and belief, Citibank's "blanket ban" on individuals with drug- or racketeering-related convictions has a disparate impact on Hispanic/Latino applicants such as Plaintiff in violation of the ECOA.

---

[3] "Justice-Involved Individuals and the Consumer Financial Marketplace" (January 2022) Consumer Financial Protection Bureau, available at https://files.consumerfinance.gov/f/documents/cfpb_jic_report_2022-01.pdf.

[4] *See, e.g.* "The Drug War, Mass Incarceration and Race" (June 2015) Drug Policy Initiative, available at https://www.unodc.org/documents/ungass2016/Contributions/Civil/DrugPolicyAlliance/DPA_Fact_Sheet_Drug_War_Mass_Incarceration_and_Race_June2015.pdf ("Although rates of drug use and sales are similar across racial and ethnic lines, Black and Latino people are far more likely to be criminalized than white people."); Diaz & Armenta, "Disrupting the Black-White Paradigm: Latino Arrests in California" (October 2018) University of California, Los Angeles Latino Policy & Politics Initiative, available at https://latino.ucla.edu/wp-content/uploads/2021/12/Disrupting-Black-White-Paradigm-CJ-Report-10.8.18.pdf ("While all racial/ ethnic groups experienced a decline in the number of drug offense arrests, the share of arrests for Latinas increased from 26 percent in 2008 to 35 percent in 2017."); Camplain et al., "Racial/Ethnic Differences in Drug- and Alcohol-Related Arrest Outcomes in a Southwest County from 2009 to 2018" (January 22, 2020) American Journal of Public Health, available at https://ajph.aphapublications.org/doi/10.2105/AJPH.2019.305409 ("For disposition of arrest, AI/AN, Latino/Latina, and Black persons were convicted more often and were more likely to serve time for a crime in a correctional facility, whether in the county jail or at the department of corrections (prison), than White persons.").

[5] *See, e.g.* Jordan Blair Woods, "Systemic Racial Bias and RICO's Application to Criminal and Prison Gangs" 17 Mich. J. Race & L. 303 (2012) (finding that "[a] strong majority of the [RICO] prosecution cases [in the sample] . . . were affiliated with one or more racial minority groups," and finding that over a ten year period, more than 40% of RICO prosecutions studied targeted members Latino-affiliated gangs (compared to less than 14% that targeted white gangs)).

61. Specifically, Citibank's "blanket ban" results in Citibank disproportionately refusing to extend credit to Latinos such as Plaintiff as compared to other groups.

62. Citibank's conduct is willful and ongoing. Plaintiff seeks to halt Citibank's unlawful conduct on behalf of the general public.

### *Citibank's Breach of the Arbitration Agreement*

63. Citibank imposes a mandatory arbitration provision upon all its credit card customers, including Plaintiff, via Citibank's Credit Card Agreement. However, the arbitration provision provides that claims for public injunctive relief may be pursued in Court because arbitrators have no power to fashion relief beyond individual relief.

64. Simultaneously with filing her Second Amended Complaint, Plaintiff filed her claims for damages against Citibank with the American Arbitration Association pursuant to its arbitration provision.

65. Citibank failed to timely pay its share of the arbitration fees as required by the American Arbitration Association. As a result of Citibank's failure to timely pay its share of the arbitration fees, the American Arbitration Association closed the arbitration due to Citibank's default.

66. In failing to pay its share of the arbitration fees and costs, Citibank materially breached its arbitration provision and waived its right to compel arbitration pursuant to Code of Civ. Proc. § 1281.97.

67. Plaintiff is now entitled under Code of Civ. Proc.§ 1281.97(b) to pursue her claims for damages in this Court.

**FIRST CAUSE OF ACTION**
**(Violations of the Investigative Consumer Reporting Agencies Act, Civil Code §§ 1786.12, 1786.18, against Citibank and Applicable Does )**

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Civil Code section 1786.12 provides the limited circumstances for which an investigative consumer report may be provided. It states in relevant part that an investigative

consumer reporting agency shall only furnish an investigative consumer report under the following circumstances:

(a) In response to the order of a court having jurisdiction to issue the order.
(b) In compliance with a lawful subpoena issued by a court of competent jurisdiction.
(c) In accordance with the written instructions of the consumer to whom it relates.
(d) To a person that it has reason to believe:
   (1) Intends to use the information for employment purposes; or
   (2) Intends to use the information serving as a factor in determining a consumer s eligibility for insurance or the rate for any insurance; or
   (3) Intends to use the information in connection with a determination of the consumer s eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider the applicant s financial responsibility or status; or
   (4) Intends to use the information in connection with an order of a court of competent jurisdiction to provide support where the imposition or enforcement of the order involves the consumer; or
   (5) Intends to use the information in connection with the hiring of a dwelling unit, as defined in subdivision (c) of Section 1940.

70. None of these circumstances apply to Refinitiv's furnishing of an investigative consumer report about Plaintiff.

71. Civil Code section 1786.18 provides:

(a) Except as authorized under subdivision (b), an investigative consumer reporting agency may not make or furnish any investigative consumer report containing any of the following items of information:
   (1) Bankruptcies that, from the date of the order for relief, antedate the report by more than 10 years.
   (2) Suits that, from the date of filing, and satisfied judgments that, from the date of entry, antedate the report by more than seven years.
   (3) Unsatisfied judgments that, from the date of entry, antedate the report by more than seven years.
   (4) Unlawful detainer actions where the defendant was the prevailing party or where the action is resolved by settlement agreement.
   (5) Paid tax liens that, from the date of payment, antedate the report by more than seven years.
   (6) Accounts placed for collection or charged to profit and loss that antedate the report by more than seven years.

      (7) Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years. These items of information shall no longer be reported if at any time it is learned that, in the case of a conviction, a full pardon has been granted or, in the case of an arrest, indictment, information, or misdemeanor complaint, a conviction did not result; except that records of arrest, indictment, information, or misdemeanor complaints may be reported pending pronouncement of judgment on the particular subject matter of those records.

      (8) Any other adverse information that antedates the report by more than seven years.

72. Refinitiv furnished an investigative consumer report that included information prohibited from disclosure, including records of arrest and conviction of a crime that, from the date of disposition, release, and parole, antedate the report by more than seven years.

73. According to Civil Code § 1786.16, "[t]hose persons described in subdivision (d) of Section 1786.12 constitute the sole and exclusive class of persons who may cause an investigative consumer report to be prepared."

74. Citibank is not a person described in subdivision (d) of Civil Code § 1786.12 as to Plaintiff.

75. Citibank nonetheless caused an investigative consumer report to be prepared about Plaintiff in violation of Civil Code § 1786.16.

76. By the conduct alleged herein, Defendants have violated the ICRAA.

77. As a direct and proximate result of the violations alleged above, Plaintiff has been damaged in an amount to be proven at trial, but in no case less than $10,000 per violation as provided for under Civil Code § 1786.50(a)(1).

78. Defendants' conduct was willful and/or grossly negligent.

79. Pursuant to Civil Code § 1786.50, Plaintiff is entitled to recover punitive damages, costs of the action, and her attorneys' fees.

WHEREFORE, Plaintiff prays for the relief set forth below.

**SECOND CAUSE OF ACTION**
**(Violations of the Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq.*, against Defendant Citibank and Applicable Does)**

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Plaintiff was a Citibank cardholder. In or around August 2022, Citibank procured a consumer report pertaining to Plaintiff from Refinitiv.

82. Based on the information contained in the report, Citibank cancelled Plaintiff's credit cards.

83. Citibank's conduct denied Plaintiff the full and equal privilege of Citibank's services.

84. Citibank's conduct was substantially motivated by Plaintiff's race and ethnicity.

85. Citibank's conduct harmed Plaintiff.

86. As a direct and proximate result of Citibank's conduct, Plaintiff suffered damages.

87. Pursuant to Civil Code § 52, Plaintiff is entitled to no less than $4,000 or actual damages to be determined at trial, plus her reasonable attorneys' fees.

WHEREFORE, Plaintiff prays for the relief set forth below.

**THIRD CAUSE OF ACTION**
**(Violations of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, against Defendant Citibank and Applicable Does)**

88. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89. The Equal Credit Opportunity Act prohibits any creditor from discriminating against any applicant with respect to any aspect of a credit transaction on the basis of, *inter alia*, race or national origin. 15 U.S.C. § 1691(a). This prohibition covers practices that, although they are neutral on their face as to protected categories, nonetheless have a disparate impact on the basis of protected categories such as race and national origin.

90. Plaintiff is and was an "applicant' as that term is defined in 15 U.S.C. § 1691a(b) and 12 C.F.R. § 1002.2(e) because she requested and received an extension of credit from Citi.

91. Citibank is and was a "creditor" as that term is defined in 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l) because Citibank regularly extends, renews, or continues credit.

92. The credit cards belonging to Plaintiff that Citibank cancelled constituted "credit" as that term is defined in 15 U.S.C. § 1691a(d) and 12 C.F.R. § 1002.2(j).

93. Citibank's conduct as alleged herein constitutes a violation of the ECOA because Citibank's blanket ban policy discriminates against applicants, including Plaintiff, on the basis of protected characteristics including race and/or national origin.

94. Pursuant to 15 U.S.C. § 1691e(a), Plaintiff is entitled to recover her actual damages in an amount to be proven at trial.

95. Pursuant to 15 U.S.C. § 1691e(b), Plaintiff is entitled to recover punitive damages in addition to her actual damages.

96. Pursuant to 15 U.S.C. § 1691e(c), Plaintiff is entitled to such equitable and declaratory relief as necessary to enforce the requirements of the ECOA.

97. Pursuant to 15 U.S.C. § 1691e(d), Plaintiff is entitled to recover the costs of the action together with reasonable attorney's fees.

WHEREFORE, Plaintiff prays for the relief set forth below.

**FOURTH CAUSE OF ACTION**
**Violations of the Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(Public Injunctive Relief, against Defendant Citibank)**

98. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99. California's Unfair Competition Law empowers courts "to prevent the use or employment by any person of any practice which constitutes unfair competition," Cal. Bus. & Prof. Code § 17203, and prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," id. § 17200. The UCL provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the public.

100. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing of this suit, Citibank has committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to, violations of the FCRA, ICRAA, and ECOA.

101. Citibank is not a person described in subdivision (d) of Civil Code § 1786.12 as to Plaintiff. Despite this, Citibank has caused investigative consumer reports to be issued either by falsely certifying that its has complied with Civil Code § 1786.16(a)(4) or otherwise claiming an entitlement to procure an investigative consumer report about Plaintiff.

102. Plaintiff is and was an "applicant' as that term is defined in 15 U.S.C. § 1691a(b) and 12 C.F.R. § 1002.2(e) because she requested and received an extension of credit from Citi.

103. Citibank is and was a "creditor" as that term is defined in 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l) because Citibank regularly extends, renews, or continues credit.

104. The credit cards belonging to Plaintiff that Citibank cancelled constituted "credit" as that term is defined in 15 U.S.C. § 1691a(d) and 12 C.F.R. § 1002.2(j).

105. As a direct and proximate result of Citibank's conduct, Plaintiff has lost money or property. For example, by closing Plaintiff's credit accounts, Citibank damaged her credit by increasing her credit utilization ratio and decreasing the length of her credit history. Damage to credit is a "loss of money or property" within the meaning of the UCL.

106. Plaintiff also lost money by losing financial resources in the form of access to credit, and therefore losing the ability to purchase things she needed at the time she needed them.

107. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Citibank from repeating the unlawful, unfair and fraudulent business acts and business practices alleged above. If Citibank is not enjoined from this conduct, it will continue to engage in these unlawful practices.

108. Plaintiff requests that the Court issue a preliminary and permanent injunction requiring Citibank to (a) cease its practice of obtaining consumer reports that have not been

authorized, (b) violating the privacy rights of members of the public, and (c) from discriminating against members of the public in a manner that violates ECOA.

109. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff herein takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5 and otherwise.

WHEREFORE, Plaintiff prays for the relief set forth below.

**FIFTH CAUSE OF ACTION**
**Violation of Right to Privacy**
**(Cal. Const. Art. 1 § 1)**
**(Against Defendant Citibank and Applicable Does)**

110. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111. California's Constitution affords Californians a right to privacy.

112. Though Plaintiff had previously been convicted of a crime, she is nonetheless entitled to, and possesses, and had, a reasonable expectation of privacy about her past criminal record. This expectation included the right for Plaintiff to expect that convictions that are more than seven years old would not be requested by or disclosed to her credit card issuers.

113. Citi, by soliciting and receiving a report containing criminal record information about Plaintiff, affirmatively violated Plaintiff's reasonable expectation of privacy.

114. Refinitiv, by accessing the records of California courts and furnishing them unlawfully to Citi, and without a permissible purpose, violated Plaintiff's reasonable expectation of privacy. The invasion of privacy was serious and caused harm to Plaintiff. Furthermore, by providing Plaintiff's consumer report to Citibank without a permissible purpose, and without notifying Plaintiff that it was providing adverse public record information to Citi, Plaintiff was not able to control her right to ensure she was aware of, any approved, who received her consumer report.

115. Citibank and Refinitiv were aware that they are subject to state and federal consumer reporting laws and that they had legal obligations under both statutes. By flouting these laws, Citibank and Refinitiv acted with malice, and its violations of Plaintiff's privacy was willful and reckless.

116. As a direct and proximate result of Citibank and Refinitiv's conduct, Plaintiff's right to privacy was violated and she has suffered harm in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for the relief set forth below.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following as against Defendant Citibank:

1. Issue a permanent injunction against Citibank to prohibit its ongoing violations of the UCL as alleged herein;
2. Award Plaintiff's damages pursuant to Civil Code § 1786.50, Civil Code § 52(a), 15 U.S.C. § 1691e; and 15 U.S.C. § 1681n in an amount to be proven at trial;
3. Award Plaintiff punitive damages;
4. Award Plaintiff's attorneys' fees and reasonable costs of suit pursuant to Code of Civil Procedure § 1021.5; Civil Code § 1786.50; 15 U.S.C. § 1691e(d); and 15 U.S.C. § 1681m; and any other applicable provision of law.
5. Award Plaintiff sanctions, including attorneys' fees and costs, pursuant to Code of Civil Procedure §§ 1281.98 and 1281.99; and
6. Order such further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 3, 2024

JUBILEE LEGAL
OLIVIER & SCHREIBER LLP
RIGHTS BEHIND BARS

By: _____
Christian Schreiber
Attorneys for Plaintiff